# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SHIRLEY LAHOMA SURLES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-522-STE** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for supplemental security income and disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

Plaintiff's applications for supplemental security income and disability insurance was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 23-33). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2011, the alleged disability onset date. (TR. 25). At step two, the ALJ determined Ms. Surles had the following severe impairments: degenerative disc disease of the back and depressive disorder. (TR. 25). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 26).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 31). The ALJ further concluded that Ms. Surles had the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she cannot balance or climb ladders, ropes, or scaffolds. She can occasionally climb stairs and ramps, kneel, crouch, crawl, and

stoop. She can understand, remember, and carry out simple tasks with routine supervision. She cannot have public contact or perform customer service work. She is able to interact appropriately with supervisors and coworkers on a superficial work basis. She is able to adapt to work situations.

(TR. 28).

Based on the finding that Ms. Surles had no past relevant work, the ALJ proceeded to step five. There, she presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 66-67). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 67). The ALJ adopted the testimony of the VE and concluded that Ms. Surles was not disabled based on her ability to perform the identified jobs. (TR. 32-33).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ: (1) failed to develop the record, (2) erred in the RFC determination, (3) erred in the credibility analysis, and (4) erred at step five. (ECF No. 16).[2]

## IV.   NO ERROR IN FAILING TO DEVELOP THE RECORD

Ms. Surles alleges the ALJ failed to develop the record concerning both her physical and mental impairments. (ECF No. 16:2-5). The Court disagrees.

---

[2]  On page one of her opening brief, Ms. Surles also alleges a fifth error entitled "The ALJ's RFC is internally flawed." (ECF No. 16:1). But in the body of the brief, Plaintiff fails to present any substantive argument regarding this alleged error, instead writing only four sub-propositions corresponding to each of the errors listed above. *See* ECF No. 16: 1-10.

## A.     ALJ's Duty to Develop the Record

It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir. 1997); 20 C.F.R. § 404.1512(a) & 416.912(a) ("[Y]ou must bring to our attention everything that shows that you are . . . disabled."). Nevertheless, because a social security disability hearing is a non-adversarial proceeding, the ALJ is "responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins,* 113 F.3d at 1164 (internal citation and quotation marks omitted). Generally, this means that the "ALJ has the duty to . . . obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir. 1996).

## A.     Physical Impairments

Regarding Plaintiff's physical limitations, the ALJ opined that Ms. Surles had the RFC to:

> [P]erform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she cannot balance or climb ladders, ropes, or scaffolds. She can occasionally climb stairs and ramps, kneel, crouch, crawl, and stoop.

(TR. 28). Ms. Surles alleges that the ALJ "created [the] functional limitations out of thin air" because "[t]here were no opinions of record as to Plaintiff's functional limitations stemming from her 'severe' physical impairments of degenerative disc disease of the lumbar spine." (ECF No. 16:2). Due to the alleged lack of evidence, Ms. Surles states: "[T]he ALJ should have fulfilled her duty to develop the record fully and fairly and

obtained some medical opinion from an examining or treating physician as to Plaintiff's functional limitations." (ECF No. 16:2). For three reasons, the Court rejects this argument.

First, a written opinion outlining specific functional limitations is not necessary for an ALJ to make an RFC determination. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (noting that the ALJ "is charged with determining a claimant's RFC from the medical record" and rejecting an argument "that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category"). Ms. Surles cites *Baker v. Barnhart*, 84 F. App'x 10, 14 (2003) suggesting otherwise, but in that case, the only pieces of evidence concerning the claimant's functional limitations were the claimant's testimony, which the ALJ rejected, and a check-the-box form, without an accompanying narrative discussion, which was completed by a non-examining physician. *See Baker*, 84 F. App'x at 14. Under those circumstances, the Court remanded, concluding that the record contained insufficient evidence on which the ALJ could have based his RFC. *Id.*

Here, however, the record contained ample evidence on which the ALJ could have based her RFC determination regarding the functional effects of Plaintiff's back impairment. *See* TR. 445 (MRI of Plaintiff's lumbar spine); 458, 459, 460, 464, 465 484-493, (records from Jackson County Memorial Hospital where Ms. Surles was treated for lower back pain); 494 (second MRI of Plaintiff's lumbar spine); 536, 546-549 (records from treating physician Dr. Patrick Felicitas who treated Plaintiff for lower back pain); 550-553 (records from treating physician Dr. Kathleen Murray who treated Plaintiff for lower back pain); 600-607 (records from PHS Indian Clinic where Ms. Surles was treated

for lower back pain); 876-880, 891-894, 900-903, 908-930 (records from Indian Health Center where Plaintiff was treated for lower back pain).

Second, the duty to further develop the record was not triggered because at the hearing, Plaintiff's attorney did not identify any issues requiring further development. *See* TR. 42-69; *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. . . . In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.")

Finally, as noted by the commissioner, the SSA *did* order a consultative examination for January 26, 2012, but Ms. Surles failed to keep the appointment. *See* ECF No. 20:6 TR. 661.

**B.      Mental Impairments**

Regarding Plaintiff's mental limitations, the ALJ opined that Ms. Surles could:

> [U]nderstand, remember, and carry out simple tasks with routine supervision. She cannot have public contact or perform customer service work. She is able to interact appropriately with supervisors and coworkers on a superficial work basis. She is able to adapt to work situations.

(TR. 28). As noted by Plaintiff, the ALJ based these findings on the opinion of non-examining State Agency physician, Dr. E. Czarnecki, whose opinion the ALJ accorded "great weight." (TR. 31). Plaintiff also correctly notes that Dr. Czarnecki appeared to have based his opinion on the findings from consulting examiner Dr. Reda Rasco. *See* TR. 659 (Dr. Czarnecki's summary of Dr. Rasco's findings). Dr. Rasco performed her examination

on January 20, 2012 and Dr. Czarnecki rendered his findings on March 16, 2012. (TR. 594-598, 644-659). Ms. Surles' administrative hearing was on July 1, 2014. (TR. 42).

Plaintiff challenges the ALJ's reliance on Dr. Czarnecki's opinion as a basis for his mental RFC findings, arguing that the opinion was "stale" as it was completed almost 28 months prior to the hearing. (ECF No. 16:3). According to Ms. Surles, the ALJ should have further developed the record "and obtained some medical opinion as to Plaintiff's functional limitations stemming from her 'severe' mental impairments." (ECF No. 16:4). The Court rejects this argument.

In addition to reports from Dr. Czarnecki and Dr. Rasco, the record contained other evidence concerning Plaintiff's mental health treatment. *See* TR. 502-520 (records from Red Rock Behavioral Health Services); 526-529 (records from Jackson County Memorial Hospital Medical Clinic); 971-973 (records from Jackson County Memorial Hospital Counseling Center). Although the records from Red Rock and Jackson County Memorial Hospital Medical Clinic pre-dated Dr. Czarnecki's report, the ALJ was still entitled to rely on them in formulating the RFC as they occurred during the disability period. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("the ALJ . . . is charged with determining a claimant's RFC from the medical record).

In support of her argument that further development was necessary because Dr. Czarnecki's opinion was "stale," Plaintiff relies on *Chapo v. Astrue*, 682 F.3d 1285 (2012). In *Chapo*, the ALJ had relied on the opinion of an examining physician who had rendered an opinion prior to additional testing and findings by another physician who indicated greater restrictions than noted by the original examining physician. *Chapo*, 682 F.3d at

1292. The plaintiff challenged the ALJ's reliance on the examining physician's opinion and the Tenth Circuit Court of Appeals stated:

> [W]hile [the examining physician's] opinion may have been supported by and consistent with the medical record of evidence when he gave it in early 2008, it does not account for material objective evidence developed long afterward. The staleness of his opinion . . . is perhaps reflected in the ALJ's recognition that [the plaintiff's] skeletal condition actually restricted her to a limited range of light work.

*Id.* at 1292-1293 (internal quotation marks omitted). Ultimately, the Court noted that the ALJ's reliance on the "stale" opinion was "troubling" and on remand, the Court "encourage[ed] the ALJ to obtain an updated exam or report[.]" *Id.* at 1293.

Ms. Surles' reliance on *Chapo* is both misplaced and not persuasive. First, unlike the situation in *Chapo*, the record here did not contain any mental health evidence which revealed that Plaintiff suffered from greater mental health restrictions than those opined by Dr. Czarnecki. (TR. 267-976). Second, the Tenth Circuit only "encourage[ed]" the ALJ to obtain an updated report in lieu of the apparent conflict, but the Court did not definitively hold that further development was required in every case where the ALJ relied on a seemingly "stale" report.

Finally, at the hearing, Plaintiff's counsel failed to identify any issue concerning Plaintiff's mental health which he believed needed further development. (TR. 42-69). As discussed, this factor additionally weighs against Plaintiff in determining whether further development was required. *See Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

### C.    Summary

In sum, Ms. Surles failed to attend an ordered consultative physical examination, Plaintiff's counsel's failed to identify any issues needing further development, and the record contained an abundance of evidence from various medical sources who treated Plaintiff's various impairments. Accordingly, the Court concludes that the ALJ did not err in failing to further develop the record regarding Ms. Surles' physical or mental limitations.

## V.    NO ERROR IN THE RFC DETERMINATION

In her second allegation of error, Plaintiff argues: (1) the RFC for "simple" work failed to reflect the ALJ's finding that Plaintiff suffered from "moderate" difficulties in the area of concentration, persistence, and pace, and (2) that the RFC failed to account for limitations related to Ms. Surles' use of a TENS unit and her PTSD. Neither argument has merit.

First, the ALJ's finding that Ms. Surles suffered from "moderate" difficulties in the area of "concentration, persistence, and pace" was a finding made on a "Psychiatric Review Technique" (PRT) form completed by Dr. Czarnecki. (TR. 657).[3] But the PRT form, is "not an RFC assessment, but [is] used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, at *4. Thus, the ALJ had no duty to express these particular findings in the RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1203

---

[3]   It is evident from Ms. Surles' challenge to the ALJ's findings on page 27 of the transcript that she is challenging the findings made by Dr. Czarnecki as part of the PRT, as page 27 comprises the ALJ's discussion of findings on the PRT, and not any additional findings made in a separate assessment from Dr. Czarnecki regarding Ms. Surles' mental residual functional capacity. *See* ECF No. 16:5; TR. 27.

(10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *see also Beasley v. Colvin*, 520 F. App'x. 748, 754 (10th Cir. 2013) (no error in the RFC's failure to reflect a "moderate" limitation finding from the PRT form).

Next, Ms. Surles states: "The ALJ failed to account for Plaintiff's use of a TENS unit in the RFC. Plaintiff confirms she uses a TENS unit for 45 minute treatments." (ECF No. 16:6). But aside from this statement, Ms. Surles fails to argue how the use of a TENS unit would interfere with her ability to work. See *Kirkpatrick v. Colvin*, ___ F. App'x ___, 2016 WL 5920745 at *3 (10th Cir. 2016) (rejecting Plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how these restrictions fail to account for his [limitations] . . . [a]nd it isn't our obligation to search the record and construct a party's arguments."); *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)).

Finally, Plaintiff argues that the ALJ "failed to consider the full effects of Plaintiff's PTSD." (ECF No. 16:6). In support, Ms. Surles cites to a therapist's diagnosis of PTSD, Dr. Czarnecki's subsequent acknowledgement of the disorder, and Dr. Rasco's findings which noted "The reported depression and PTSD are intertwined and assume elements

of anxiety." (ECF No. 16:6). But "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, ___ F. App'x. ___, 2016 WL 6440368 at *4 (10th Cir. 2016). Additionally, Plaintiff fails to identify any specific functional limitations stemming from the PTSD which would affect her ability to work. *See supra, McAnally*. Although Dr. Rasco stated that Plaintiff's prognosis is "poor," she also found that Ms. Surles' use of a prescribed antipsychotic and mood stabilizer "appear[ed] to control the reported psychosis and anxiety." (TR. 598).

In sum, the Court concludes the ALJ did not err in failing to: (1) include additional RFC restrictions related to Ms. Surles' use of a TENS unit or her PTSD or (2) translate the "moderate" finding on the PRT form into particular functional limitations in the RFC.

## VI.  NO ERROR IN THE CREDIBILITY ANALYSIS

Ms. Surles alleges that the ALJ committed legal error in the credibility analysis and that several of the reasons she provided to discount Plaintiff's credibility lacked substantial evidence. (ECF No. 16:6-9). The Court disagrees.

### A.    The Administrative Law Judge's Duty in Assessing Credibility

As part of the disability determination, the ALJ had to consider the evidence and decide whether she believed Ms. Surles' subjective complaints. *See* SSR 96-7p, at *1-2 (July 2, 1996). In doing so, the ALJ had a duty to make specific findings and link them to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting the duty to "closely and affirmatively link[ ]" credibility findings to substantial evidence); SSR 96-7p, at *4 (noting the duty to provide "specific reasons for the weight given to the individual's statements" "articulated in the determination or decision" in a manner

"sufficiently specific to make clear to the individual and to any subsequent reviewers the weight" given "to the individual's statements and the reasons for that weight").

Besides objective evidence, the ALJ may consider certain factors in evaluating a claimant's credibility, including:

- The individual's daily activities;

- The location, duration, frequency, and intensity of the individual's pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

- Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

- Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 3; *Keyes-Zachary*, 695 F.3d 1156, 1167 (10th Cir. 2012). However, "an ALJ is not required to address each factor in his decision." *Duncan v. Colvin*, 608 Fed Appx. 566, 578 (10th Cir. 2015).

**B.    No Error in the ALJ's Credibility Determination**

In evaluating Plaintiff's credibility, the ALJ stated:

The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the medical history, the reports of the treating and examining practitioners, the findings made on examination, description of her activities and life style, and the claimant's demeanor at hearing. The claimant has impairments that are reasonably

expected to produce the type of pain and symptomology she alleges, but her complaints suggest a greater severity of impairment than is shown by the objective medical evidence.

(TR. 29). The ALJ then summarized Plaintiff's testimony, her daily activities, reports of her functional limitations as listed in disability reports, objective findings in the medical record, and Plaintiff's use of pain medication. (TR. 29-30). Within the summary, the ALJ listed eleven reasons to discount Ms. Surles' credibility:

1. No objective evidence to support Plaintiff's allegations of knee buckling;

2. Plaintiff's failure to report stiffness and severe pain in her legs to any treating or examining physician;

3. No discussion of frequent migraines in the medical record despite Plaintiff's complaints that she suffered from four migraines per month;

4. No evidence in the record to support Plaintiff's allegations that she suffered side effects from her medications such as sleepiness and difficulty focusing;

5. Inconsistencies in Plaintiff's allegations regarding her ability to sit;

6. An inconsistency in Plaintiff's allegations regarding her ability to walk;

7. No objective evidence to support Plaintiff's allegations of swollen legs and feet;

8. Plaintiff's 2013 arrest for public intoxication, domestic abuse and battery;

9. A successful back surgery, supported by objective findings showing no further degenerative changes of the spine;

10. Plaintiff's successful use of prescription pain medications and mental health medications;

11. Plaintiff's non-compliance with regular mental health treatment or recommendations to attend counseling.

(TR. 29-31). Ms. Surles alleges: "The ALJ's credibility determination is both factually and legally flawed." (ECF No. 16:6). In support, Plaintiff presents seven arguments, but none have merit.

First, Plaintiff alleges that the ALJ improperly relied on Plaintiff's demeanor to discredit her testimony. (ECF No. 16:6-7). While an ALJ may not rely *solely* upon a claimant's demeanor to reject complaints of disabling pain, no error exists when the ALJ considers demeanor as one factor in evaluating Plaintiff's credibility. *See Hayman v. Sullivan*, 977 F.2d 595 (10th Cir. 1992) ("The ALJ may not rely solely upon a claimant's demeanor to reject complaints of disabling pain. In this case, however, the ALJ properly considered claimant's demeanor, along with all the other evidence presented, in determining that claimant's complaints of disabling pain were not credible.") (internal citation omitted).

Second, Ms. Surles challenges the ALJ's reliance on "findings on examination," stating:

> As to the findings on examination, Dr. Rasco, to whose opinion the ALJ gave "great" weight, believed Plaintiff as to her past and present condition. Nonetheless, the ALJ found there [sic] a lack of evidence of instability corroborating Plaintiff's statements that her legs had a tendency to go numb after standing for 10 to 15 minutes. The record confirms Plaintiff visited the ER to be treated for injuries sustained by a fall. Plaintiff specifically and repeatedly told her physician about the numbness in her legs.

(ECF No. 16:7). The problem with this argument is that the ALJ never found "a lack of evidence of instability" corroborating Plaintiff's statements regarding her legs going numb. In fact, the only statement the ALJ made regarding Plaintiff's leg numbness was that "[Plaintiff] says she can stand 10 to 15 minutes before experiencing numbness in

her legs." (TR. 29). Outside of this assertion, the ALJ never commented on whether he believed Ms. Surles or not regarding this particular impairment. (TR. 29).

Third, Plaintiff states: "The ALJ erroneously found Plaintiff had not mentioned to any treating or examining physician about the episodes in which her legs become stiff at night. Plaintiff did tell her therapist." (ECF No. 16:7). In support of the challenge, Ms. Surles cites page 459 of the transcript. (ECF No. 16:7). This record does not corroborate Plaintiff's claim. (TR. 459). In the record, the physical therapist notes Plaintiff's report of nighttime bilateral lower extremity tingling, but not stiffness. (TR. 459). The distinction is critical, as Plaintiff testified regarding two distinct leg issues. When the ALJ asked Ms. Surles to discuss her leg pain, she replied "It depends on which leg pain you're discussing." (TR. 58). Plaintiff then went on to describe: (1) numbness and a feeling that her legs were "asleep" which usually occurred after sitting a long time and (2) leg stiffness which occurred in the middle of the night. (TR. 58-59). It appears as though Plaintiff reported the former problem to the physical therapist, but not the latter. (TR. 459).

Fourth, Plaintiff challenges the ALJ's reliance on her inconsistent allegations regarding her ability to sit. (ECF No. 16:7). In the decision, the ALJ noted that in one disability report, Plaintiff stated that she could sit only 3-5 minutes before having to change positions. (TR. 29); *see* TR. 232. But as the ALJ noted, in a report dated six months later, Plaintiff stated that she could sit for 20-30 minutes before having to change positions. (TR. 29); *see* TR. 261. Ms. Surles contends: "There is no inconsistency, however. Plaintiff sits for 20-30 minutes with changing of positions or getting up and then down." (ECF No. 16:7). But the record does not support Ms. Surles' claim, as the report

documenting the 20 to 30-minute period does not also allow for intermittent changing of positions within that time frame. *See* TR. 261.

Fifth, Plaintiff states:

The ALJ found Plaintiff's testimony she went to Norman or Blanchard once a week to be inconsistent with her testimony she could drive only short distances. Norman was only 16 miles away. This is a short distance. As to Blanchard, Plaintiff lives in Blanchard. And, Plaintiff did not testify she drove—only that she traveled to these places.

(ECF No. 16:8). Plaintiff again mischaracterizes the ALJ's references to Plaintiff's travels. The ALJ did not point to any "inconsistency," but merely noted that the evidence was indicative of Plaintiff's ability to "drive herself as necessary." (TR. 30). Plaintiff correctly notes that Ms. Surles' testimony regarding her trips were in response to the ALJ's question regarding whether she "traveled" anywhere. (TR. 50). While the ALJ did not specifically ask Plaintiff whether she drove on those travels, Ms. Surles likewise never stated that she did not drive. (TR. 50-52). In any event, the ALJ did not rely on an "inconsistency" regarding Plaintiff's travels to discount her credibility. (TR. 30).

Sixth, Plaintiff contends: "The ALJ has also improperly relied on Plaintiff's purported ability to perform activities of daily living. . . . In the Tenth Circuit, the performance of household tasks does not establish that a person is capable of engaging in substantial gainful activity." (ECF No. 16:8) (internal citation omitted). But Ms. Surles is incorrect, as the ALJ may rely on a claimant's daily activities as one factor in the credibility analysis. *See* SSR 96-7p at *3. Furthermore, aside from Plaintiff's vague statement, she makes no substantive argument regarding which of her daily activities the ALJ had improperly credited.

Finally, Plaintiff states: "The ALJ concluded there was no discussion of Plaintiff's migraines in the medical record. On the contrary, Plaintiff was treated for migraines and reported headaches." (ECF No. 16:8-9). Again, Plaintiff mischaracterizes the ALJ's findings. The ALJ did not completely discredit Plaintiff's complaints of migraines, rather only noted that her testimony regarding four migraines per month was not supported by the record. (TR. 29). Indeed, Plaintiff's own references to the record corroborate the ALJ's statement. Of the seven pages Plaintiff cited in support of her claim for "migraines and headaches," two did not reference headaches at all (TR. 397, 402), one stated that Plaintiff was "positive" for a complaint of headache (TR. 403), two discussed a head trauma suffered by Plaintiff as a result of her being assaulted (TR. 522, 523), and two noted that Ms. Surles took medication to treat migraines. (TR. 596, 606). But these records do not support Plaintiff's allegations that she suffered from migraine headaches four times a month, which had been the ALJ's conclusion.

## C.    Summary

In sum, Plaintiff argues legal error—that the ALJ made conclusory statements regarding Plaintiff's testimony without evidentiary support—and that the ALJ's rationales lacked substantial evidence. Plaintiff is wrong on both accounts. In discounting Ms. Surles' credibility, the ALJ engaged in a lengthy discussion of Plaintiff's testimony, disability reports, and medical findings. (TR. 29-31). The ALJ provided eleven reasons to discount Plaintiff's credibility, linking each to specific evidence in the record. (TR. 29-31). Accordingly, the Court concludes that the ALJ's credibility was legally correct and was supported by substantial evidence.

## VII. NO ERROR AT STEP FIVE

As part of the RFC determination, the ALJ stated that Ms. Surles could perform jobs which involved the ability to "understand, remember, and carry out simple tasks with routine supervision." (TR. 28). With these limitations, a VE testified that Ms. Surles could perform the jobs of: (1) document scanner (DOT #249.587-018), (2) address clerk (DOT #209.587-010), and (3) product inspector (DOT #726.684-050). (TR. 32). All of these jobs are "unskilled" and the job of address clerk and product inspector require "reasoning level 2" while the job of document scanner requires "reasoning level 3." *See* DOT #249.587-018 (document scanner); DOT #209.587-010 (address clerk), and DOT #726.684-050 (product inspector); *see also* TR. 32. By definition, "reasoning level 3" requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer. "Reasoning level 2" requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

According to Ms. Surles, the ALJ improperly relied on the job of document scanner because it required a "reasoning level 3," which Plaintiff alleges is inconsistent with the ALJ's finding that Plaintiff could only perform simple work. (ECF No. 16:9-10). The Court agrees. *See Hackett v. Barnhart*, 395 F3d. 1168, 1176 (10th Cir. 2005) (finding that an

RFC for "simple and routine work tasks" "seem[ed] inconsistent with the demands of level-three reasoning.") (internal citation omitted).

However, the ALJ also found that Plaintiff could perform the jobs of address clerk and product inspector, both of which require "reasoning level 2." *See* DOT #209.587-010 (address clerk), and DOT #726.684-050 (product inspector). But Plaintiff argues that those jobs would be improper "[h]ad the ALJ included all the limitations opined by Dr. Czarnecki in the RFC," specifically Dr. Czarnecki's opinion that Plaintiff had marked limitations in the ability to understand, remember, and carry out detailed instructions." (ECF No. 16:10).

This particular limitation is found in Section I of Dr. Czarnecki's Mental Residual Functional Capacity Assessment (MRFCA). (TR. 644). In Section III of the MRFCA, however, Dr. Czarnecki explained the effect of his Section I findings and opined that Plaintiff could "perform simple tasks with routine supervision." (TR. 646). The ALJ accorded Dr. Czarnecki's opinion "great weight" and adopted the physician's Section III findings in the RFC. *See* TR. 28. The initial issue, therefore, is whether the ALJ erred in failing to incorporate Dr. Czarnecki's Section I findings in the RFC. If so, a potential error could exist at step five. But here, no error occurred.

The Tenth Circuit has held that "[w]here a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC." *Fulton v. Colvin*, 631 F. App'x. 498, 502 (10th Cir. 2015) (citing *Carver v. Colvin*, 600 F. App'x. 616, 618–19 (10th

Cir. 2015)). In Section I, Dr. Czarnecki concluded that Plaintiff had "marked" difficulties in her ability to understand, remember, and carry out detailed instructions. (TR. 644). In Section III, Dr. Czarnecki explained the effect of that limitation by limiting Plaintiff to performing "simple tasks with routine supervision." (TR. 646). Accordingly, the ALJ was entitled to only adopt the Section III narrative and no error existed by failing to adopt the particular Section I finding as argued by Plaintiff. *See Fulton v. Colvin*, 631 F. App'x 498, 506-507 (10th Cir. 2015) (no error in failing to adopt specific Section I finding when the Section III narrative, with was adopted, accounted for the Section I finding). Because the ALJ properly relied on Dr. Czarnecki's Section III findings, the issue becomes whether the ALJ properly relied on the jobs of address clerk and product inspector, which both required "reasoning level 2." The answer is yes.

In *Hackett v. Barnhart*,[4] The Tenth Circuit Court of Appeals addressed a similar challenge. There, the Court noted that "level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* The plaintiff had an RFC which required him to perform only "simple and routine work tasks," which he argued was inconsistent with the jobs at step five, which required "reasoning level 3." *Id.* The Court agreed, stating that the RFC for "simple and routine work tasks" was consistent with *level 2* reasoning. *Id.*

---

[4] 395 F. 3d. 1168 (10th Cir. 2005).

*Hackett v. Barnhart* is controlling. Similar to the plaintiff in *Hackett*, the ALJ here found that Ms. Surles was capable of performing "simple tasks with routine supervision." (TR. 28). Under *Hackett*, this RFC is consistent with "reasoning level 2" which is required by the jobs of address clerk and product inspector. *See* DOT #209.587-010 and DOT #726.684-050. Accordingly, the Court concludes that no error exists.[5]

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **AFFIRMS** the Commissioner's decision.

ENTERED on February 23, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[5] In her Reply Brief, Ms. Surles argues that reliance on the jobs of address clerk and product inspector would be improper because the ALJ failed to make a finding that these jobs existed in "significant numbers" when considered without the job of document preparer. (ECF No. 21:4). But the Court will not address this argument because Plaintiff failed to raise the issue in her Opening Brief. *See Stump v. Gates,* 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief.").